UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUIS IRIGOYEN | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL NO. _____ |
| | § | |
| HUDSON HOUSE LAKEWOOD, LLC | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Luis Irigoyen and files this his Original Complaint against Hudson House Lakewood, LLC ("Hudson House"), and in support thereof would respectfully show the Court as follows:

### INTRODUCTION

Vandelay Hospitality Group owns and operates a group of successful restaurants in the DFW Metroplex, including the named Defendant herein, Hudson House. Hunter Pond is Vandelay's CEO and Jon Peck is the COO. To the public, Vandelay presents its success as the result of its "commitment and respect to our partners and guests."[1] In reality, under the leadership of its CEO and COO, Vandelay's corporate culture has become shot-through with racism, sexism, homophobia, and outright disdain for its employees. Contrary to Vandelay's public image, Pond

---

[1] *See* https://vandelayhospitality.com (accessed June 7, 2021).

and Peck have fostered an environment where the most senior levels of corporate management do not hesitate to terminate and discriminate against employees based on race, national origin, sexual orientation, and other federally protected classes. These practices have trickled down to their restaurants, and store level management has engaged in similar practices as witnessed at the corporate level. Plaintiff Irigoyen has been subjected to such discrimination, and for these and the other reasons detailed herein, Mr. Irigoyen now seeks money damages under Federal statutory and common law.

## I.
## PARTIES

1. Plaintiff Irigoyen is an individual residing in Texas. Plaintiff is of Hispanic descent.

2. Defendant Hudson House Lakewood, LLC is a domestic limited liability company and may be served with process by serving W. Hunter Pond at 3838 Oak Lawn Avenue, Suite 1350, Dallas, Texas 75219.

## II.
## JURISDICTION & VENUE

3. Jurisdiction is conferred upon this Court Pursuant to 28 U.S.C.A. §1332 because the matters in controversy arise under the Constitution and laws of the United States. Furthermore, this Court has supplemental jurisdiction over various state and common law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(1) and 28 U.S.C. §1391(b)(2) because Hudson House transacts business in this district and because the violations of *Title VII of the Civil Rights Act of 1964,* described herein, occurred within this judicial district.

## III.
## FACTS

**A.** **Plaintiff is hired by Defendant Hudson House**

5. In the summer of 2021, Plaintiff was hired by Defendant to be a bartender at the Hudson House located at 4040 Abrams Road, Dallas, Texas 75214.

6. During Plaintiff's first week of employment, a co-worker "outed" Plaintiff by stating out loud "Luis, I didn't know you were gay" in front of guests and other co-workers.

7. Plaintiff addressed the comment the next day with Defendant's management team, specifically general manager Mark Collins ("Collins") and service manager Michelle Cheetman ("Cheetman").

8. During the discussion, Plaintiff made it known that he was uncomfortable working with an employee behind the bar who outed him to the other employees and made his sexual orientation public knowledge.

**B.    Defendant Hudson House singles out Plaintiff.**

9. While working at Hudson House, when the bar was particularly busy, Plaintiff and other bartenders regularly engaged in the practice of serving drinks to customers before ringing them in.

10. This was done not to provide free drinks to customers, but because it was more time efficient to do so for the bartenders.

11. On the night of December 13, 202, Defendant singled out Plaintiff for this practice.

12. Plaintiff was working behind the bar, along with several other bartenders, and served one of his regulars prior to ringing in the drink. Collins immediately ran to pull up the bar tab of Plaintiff's customer and began raising his voice and threatened to fire Plaintiff.

13. After being yelled at, Plaintiff reminded his co-workers to ring in drinks before serving them to avoid this issue with Collins. Collins overhearing this, slammed the kitchen door open and demanded Plaintiff come to the kitchen. Collins accused Plaintiff of "talking shit" about him to the other bartenders.

14. Collins began to berate Plaintiff in front of the kitchen staff. Plaintiff advised Collins that had he checked every other bartender's tabs, he would have found the same thing.

15. Collins did not go and check any of the other bartenders' current tabs.

16. Plaintiff reminded Collins of Defendant's open-door policy and that Collins should have instructed him on how to do the job properly, rather than admonishing him in front of other employees.

17. Collins continued to berate Plaintiff until Plaintiff began to cry. Defendant then apologized to Plaintiff and cited the stress he was under and gave Plaintiff an unwanted hug.

### C. Second Employee of Defendant discriminated against Plaintiff.

18. Later that evening, as Plaintiff was walking through the kitchen, a cook told Plaintiff to say excuse me when walking through the kitchen. Plaintiff questioned the cook as to whether he required all Hudson House employees to say excuse me or just Plaintiff.

19. The cook responded by calling Plaintiff "stupid" and a "faggot" and followed Plaintiff to the bar to continue to swear at him and get in his face.

20. Manager Heather Hudson ("Hudson") saw this interaction, and instead of stopping the conduct and reprimanding the cook, she turned a blind eye to the cook's conduct and hateful speech.

### D. Plaintiff's Pretextual Firing

21. The following day, December 14, 2021, Plaintiff returned to work for the morning shift.

22. After his shift and as he was ready to leave work, Collins requested a word with Plaintiff in his office.

23. Collins questioned Plaintiff regarding the incident with the cook the night prior as Hudson had brought the incident to Collins attention.

24. Plaintiff acknowledged the incident and questioned why Hudson failed to address the cook's language and slurs used towards him.

25. Plaintiff proceeded to identify sections of the company handbook which had been violated against Plaintiff during his employment with Hudson House.

26. Collins blatantly told Plaintiff that it "was his problem", and that Plaintiff was trying to tell Collins how to run the store. Collins proceeded to terminate Plaintiff and stated, "how about insubordination for not listening to a manager when you were asked to".

27. Instead of addressing the inappropriate behavior of Plaintiff's co-workers in "outing" Plaintiff at work and using obscene homophobic slurs against him in the workplace, Defendant instead terminated Plaintiff because his sexual orientation was becoming an issue at the restaurant and Plaintiff had complained about these issues to Defendant's management.

## IV.
## CAUSES OF ACTION

**Count One – Discrimination and Violation of Title VII of the Civil Rights Act of 1964**

28. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above as if the same were set forth in full herein.

29. Title VI of the Civil Rights Act of 1964 states it shall be unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin". 42 U.S.C. § 2000e.

30. At all times relevant to this case, Mr. Irigoyen was an "employee" within the meaning of 42 U.S.C. §2000e(f).

31. At all times relevant to this case, Hudson House has been an "employer" within the meaning of 42 U.S.C. §2000e(b).

32. Hudson House's actions described above constitute unlawful discrimination against Mr. Irigoyen based on race and sexual orientation under 42 U.S.C. § 2000e.

33. The discriminatory acts complained of here which constitute Hudson House's discrimination against Plaintiff are part of an ongoing pattern and practice of discrimination against those who are not white/Caucasian, part of the gay community, and other protected classes recognized under federal law.

34. As a result of Hudson House's discrimination, Irigoyen has suffered and will continue to suffer pecuniary losses including, but not limited to, lost wages and benefits associated with his employment.

35. As a further result of Hudson House's discriminatory conduct, Irigoyen has suffered non-pecuniary losses, including, among others, humiliation, damage to professional and personal reputation, undue stress, anxiety, and anguish, and other non-pecuniary losses.

36. Hudson House has acted with malice and/or reckless indifference to Irigoyen's federally-protected rights, thereby entitling him to punitive damages under 42 U.S. Code § 1981a.

**Count Two – Retaliation and Violation of Title VII of the Civil Rights Act of 1964**

37. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above as if the same were set forth in full herein.

38. Hudson House, and federal law, prohibits unlawful discrimination, harassment, and retaliation and any and all harassing or discriminating conduct against a protected class (of race, color, religion, sex, pregnancy, age, national origin, disability).

39. Such prohibited conduct according to Hudson House includes but is not limited to offensive, derogatory, inappropriate statements, comments, slurs and/or gestures.

40. Hudson House also prohibits retaliation against any employee who makes a good faith complaint or report under their company policy.

41. Plaintiff was the subject of said prohibited conduct from at least two Hudson House employees: once being called out for being gay by a co-worker and the other in the form of being called a faggot by a kitchen worker.

42. In both instances, in accordance with the Hudson House policy, Plaintiff addressed his opposition to his co-workers' prohibited conduct and reported the harassing conduct to management of Hudson House.

43. In each instance, Hudson House acknowledged the discriminatory conduct and hate speech against Plaintiff.

44. Instead of addressing the prohibited conduct under their company policy, Defendant took an adverse action against Plaintiff and including singling him out while working behind the bar and ultimately terminated him rather than addressing the prohibited conduct by the cook and co-worker.

45. This retaliatory conduct is prohibited under Federal Law as well as Hudson House's own company policy.

46. As a result of Hudson House's retaliation, Irigoyen has suffered and will continue to suffer pecuniary losses including, but not limited to, lost wages and benefits associated with his employment.

47. As a further result of Hudson House's retaliatory conduct, Irigoyen has suffered non-pecuniary losses, including, among others, humiliation, damage to professional and personal reputation, undue stress, anxiety, and anguish, and other non-pecuniary losses.

48. Hudson House has acted with malice and/or reckless indifference to Irigoyen's federally-protected rights, thereby entitling him to punitive damages under 42 U.S. Code § 1981a.

## V.
## DAMAGES

### *Actual Damages*

49. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above as if the same were set forth in full herein.

50. As a result of Hudson House's discrimination, Irigoyen has suffered and will continue to suffer pecuniary losses including, but not limited to, lost wages and benefits associated with his employment.

51. As a further result of Hudson House's discriminatory conduct, Irigoyen has suffered non-pecuniary losses, including, among others, humiliation, damage to professional and personal reputation, undue stress, anxiety, and anguish, and other non-pecuniary losses.

### *Exemplary Damages*

52. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above as if the same were set forth in full herein.

53. Defendant's acts complained of herein were committed knowingly, willfully, intentionally, and with actual awareness or actual malice. In order to punish Defendant for such unconscionable actions and to deter the same in the future, Plaintiff seeks recovery against Defendant for exemplary damages pursuant to *42 U.S. Code § 1981a.*

54. Hudson House has acted with malice and/or reckless indifference to Irigoyen's state-protected rights, thereby entitling him to punitive damages under *42 U.S. Code § 1981a*.

55. Plaintiff also seek punitive damages for Defendant's gross negligence resulting from their pattern and practice of discrimination which resulted in his termination.

### *Attorneys' Fees*

56. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above as if the same were set forth in full herein.

57. Request is made for all costs and reasonable and necessary attorneys' fees incurred by or on behalf of Plaintiff pursuant to *42 U.S.C. 2000e-5(k)* and each of the causes of action stated above.

### VI.
### CONDITIONS PRECEDENT

58. All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

59. On or around February 21, 2022, Plaintiff filed a Form 5 Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Texas Workforce Commission Civil Rights Division ("TWC"), a true and correct copy of which is attached hereto as Exhibit A.

60. On November 1, 2022, Plaintiff received his Notice of Right to Sue ("NORTS") letter from the EEOC and TWC, a true and correct copy of which is attached hereto as Exhibit B.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and that upon a trial on the merits, this Court grant recovery against Defendant as follows:

    a)    Actual damages;

    b)    Exemplary damages pursuant to *42 U.S. Code § 1981a.*

  c) Recovery of Plaintiff's reasonable and necessary attorneys' fees and expenses incurred in filing and in the prosecution of this matter pursuant to *42 U.S.C. 2000e-5(k)*.

  d) Any and all costs and reasonable and necessary attorneys' fees incurred in any and all related appeals and collateral actions, if any;

  e) Costs of court

  f) Pre- and post-judgment interest; and

  g) All such further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**McCathern, PLLC**

*/s/ Levi G. McCathern, II*
Levi G. McCathern, II
State Bar No. 00787990
lmccathern@mccathernlaw.com
James E. Sherry
State Bar No. 24086340
jsherry@mccathernlaw.com
Jesse R. Showalter
State Bar No. 24086800
jshowalter@mccathernlaw.com
Kristin M. Hecker
State Bar No. 24116499
khecker@mccathernlaw.com
3710 Rawlins, Suite 1600
Dallas, Texas 75219
Telephone: (214) 741-2662
Facsimile: (214) 741-4717

**ATTORNEYS FOR PLAINTIFF**